UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

SHAQUILLE DELANEY,

    Defendant.

CAUSE NO. 3:22-CR-17 DRL

SENTENCING MEMORANDUM

On three occasions in August 2021 and January 2022, Shaquille Delaney sold methamphetamine to a confidential source working with law enforcement. He pleaded guilty to distributing 50 grams or more of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).

SENTENCING GUIDELINES

The court must first calculate the guideline range correctly, then decide what sentence is right and reasonable for this defendant. *Dean v. United States*, 581 U.S. 62, 67 (2017); *United States v. Swank*, 37 F.4th 1331, 1334 (7th Cir. 2022). The 2021 guidelines apply. *See Peugh v. United States*, 569 U.S. 530, 531 (2013).

    A.    *Mr. Delaney's Objection to the Two-Level Enhancement in U.S.S.G. § 2D1.1(b)(1) for Possessing a Dangerous Weapon (Paragraphs 25, 31, 39, and 116).*

The two-level enhancement for firearm possession "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 app. n.11. It applies when a dangerous weapon is present, "unless it is clearly improbable that the weapon was connected with the offense." *Id.* "The government bears the initial burden of establishing by a preponderance of the evidence that the defendant possessed a firearm, but the burden then shifts to the defendant to prove that it was clearly improbable that the weapon was used in connection with the underlying offense." *United States v. Harris*, 230 F.3d 1054, 1057 (7th Cir. 2000) (citation omitted).

The government must first demonstrate that Mr. Delaney possessed the firearm—actually or constructively. *See United States v. Cooper*, 767 F.3d 721, 732 (7th Cir. 2014). "Constructive possession is a legal fiction whereby a person is deemed to possess contraband even when he does not actually have immediate, physical control of the object." *United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012). If the defendant "knowingly had both the power and the intention to exercise dominion and control over the object, either directly or through others," constructive possession may be established. *Id.* (citation omitted). This nexus differentiates true possessors from mere bystanders. *See id.*

The residence here was seemingly shared. "When the defendant jointly occupies a residence, proof of constructive possession of contraband in the residence requires the government to demonstrate a 'substantial connection' between the defendant and the contraband itself, not just the residence." *Id.* at 697; *accord United States v. Castillo*, 406 F.3d 806, 813 (7th Cir. 2005). Constructive possession has existed when a firearm has been found in a defendant's bedroom next to envelopes addressed to him and prescription medications with his name and address; and when firearms have been found in a bedroom with a gold bracelet with his nickname, bills with his name, and men's clothing. *See Griffin*, 684 F.3d at 697 (respectively discussing *United States v. Richardson*, 208 F.3d 626, 628 (7th Cir. 2000) and *United States v. Kitchen*, 57 F.3d 516, 519-20 (7th Cir. 1995)).

Mr. Delaney admits he slept there. His father testified and vacillated from saying Mr. Delaney stayed at the home to saying he didn't, so the court finds his testimony less than credible, particularly when Mr. Delaney says he did. He had a connection to this address for some considerable time [ECF 49 at 14, 23, 53]. Aside from evidence of domain elsewhere in this modest-sized home (just over 1500 sq. ft.), including a utility bill with his name and currency that included money from a prior controlled buy, law enforcement discovered in a bedroom a loaded .22 rifle, his identification card, and drug paraphernalia. The proximate identification card within the same bedroom establishes a substantial connection between Mr. Delaney and the rifle, and thus constructive possession.

2

It also isn't clearly improbable that the firearm was used in connection with methamphetamine distribution. Mr. Delaney argues that nothing shows that he possessed the firearm "during the offense," but that argument rests on an old case and a prior (1990) version of the sentencing guideline. *See, e.g., United States v. Ford*, 22 F.4th 687, 693 (7th Cir. 2022). The fact proves helpful to consider, but it isn't decisive. *See id.* His better argument is that this was a .22 caliber rifle—a firearm that could not be readily concealed during drug distribution outside the home. After all, the guidelines offer as an example an "unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1 app. n.11(A).

But, on this record, this firearm wasn't unloaded; it wasn't used for hunting; it wasn't in a closet; and it wasn't intended for drug distribution outside the home. The rifle was loaded with one in the chamber—and thus primed for use. It was largely inaccessible to strangers and visiting buyers but accessible to Mr. Delaney, among other tools of his drug trade. His messenger chats directed customers to the home to buy drugs, and one controlled buy occurred there (and two drug sales with others). Indeed, the firearm was found a mere six days after the last controlled buy. His father even observed the firearm by the front door a couple days after that buy. The rifle thus had clear uses—protecting Mr. Delaney's stash and emboldening his trade—within a small home where he had no need to conceal the rifle beyond the bedroom. Given the messenger chats, the controlled buy, and evidence of domain and drug trade in the home, this was a headquarters of sorts for Mr. Delaney; and the firearm defended his drug trade within it. His father attributed the firearm to no one else, leaving Mr. Delaney the probable answer, not a clearly improbable one. Another firearm might have greater stopping power, and at times ease of use in the home's corners, but a .22 rifle would be accurate with little recoil, including at the perimeter.

These facts show the rifle was preponderantly connected to his offense rather than that it was improbably so.[1] *See also United States v. Perez*, 581 F.3d 539, 547 (7th Cir. 2009) (applying enhancement

---

[1] Mr. Delaney cites *United States v. North*, 900 F.2d 131, 135 (8th Cir. 1990), which found a .22 rifle wasn't connected with a drug offense, but there the .22 rifle was found in the defendant's son's room, it was inoperable, and the son

3

based on an unloaded gun discovered with ammunition in the same room); *United States v. Grimm*, 170 F.3d 760, 767 (7th Cir. 1999) ("Guns found in close proximity to illegal drugs are presumptively considered to have been used in connection with the drug trafficking offense."); *United States v. Burns*, 128 F.3d 553, 556 (7th Cir. 1997) ("possibility that [the defendant] may never have made affirmative use of a gun is irrelevant"). Accordingly, the court overrules the objection to paragraphs 25, 31, 39, and 116.

  B. *Sentencing Guidelines Calculation.*

The court adopts as its findings ¶¶ 1-133 of the presentence report, correcting certain scrivener's errors without objection.[2] Mr. Delaney is responsible for 4,559.40 kilograms of converted drug weight, starting him at level 32. U.S.S.G. §§ 2D1.1(a)(5), (c)(4). His possession of a firearm adds two levels. U.S.S.G. § 2D1.1(b)(1). His clear and timely acceptance of responsibility takes him to offense level 31. U.S.S.G. § 3E1.1.

The guidelines assess seventeen criminal history points against Mr. Delaney and place him in criminal history category VI. There the guidelines recommend a sentencing range of 188-235 months, U.S.S.G. chap. 5A, within the statutory range of ten years to life, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).

# DISCUSSION

The court decides this sentence under 18 U.S.C. § 3553(a) and *Booker v. United States*, 543 U.S. 220 (2005). Turning to the statutory factors, the court must arrive at a reasonable sentence: one sufficient but not greater than necessary to satisfy the statute's purposes. 18 U.S.C. § 3553(a).

---

testified that the firearm was his, that he used it for hunting, and that the last time his father used it was five years earlier when he taught his son how to clean it. No such testimony was presented today.

[2] On the first page and in paragraphs 1 and 115, the presentence report cites Mr. Delaney's conviction under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)*(vii)*; however, the proper statutory section is 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)*(viii)*. In paragraph 119, the report says the court "may impose a term of supervised release of at least five years. 18 U.S.C. § 3583(b)(1);" however, the court must impose a term of at least five years, *see* 21 U.S.C. § 841(b)(1)(A).

At age 32, the pull of Mr. Delaney's extensive criminal history is largely upward. *See* 18 U.S.C. § 3553(a)(1); *see, e.g., United States v. Melgar-Galvez*, 161 F.3d 1122, 1124 (7th Cir. 1998) (upholding upward variance for 18 points and citing cases doing same for 17 and 18 points); *see also* 18 U.S.C. § 3553(a)(5); U.S.S.G. § 4A1.3(a)(1) app. n.2(B). His twelve convictions average about one a year since age 19—persistent then, with seven prior drug convictions. Entrenched recidivism, including with drugs, calls for a measurable deterrent, even noting his likely age on release. *See* 18 U.S.C. § 3553(a)(2)(B); United States Sent. Comm'n (USSC), *Recidivism of Federal Drug Trafficking Offenders Released in 2010* 32, 111 (2022) (81.6 percent rearrest rate for drug offenders ages 30-39 in CHC VI compared to 71.1 percent for those ages 40-49 in CHC VI) (78.6 percent rearrest rate for methamphetamine traffickers in CHC VI).

Self-described as using drugs because he has nothing else to do, drugs have gained a stronghold in his life too. He bounced between his parents and seven years in foster care far too much for real stability; but, despite this, he excelled in high school with a 3.64 GPA and attended some college. He is reported by counsel to have engaged in substantive and mature discussions during his defense. He received forklift operation training. He has an entrepreneurial spirit and has created two retail clothing businesses, including one as recent as 2020. He attended drug treatment four times to his credit. He declined medication and mental health treatment as nonsense. Having "nothing else to do" for someone with his intelligence and capability seems more an excuse than a true reason, and his future success seems tied to his ability to combat drugs in his life. *See* 18 U.S.C. § 3553(a)(1).

Mr. Delaney invites the court to disregard the methamphetamine guideline because it rests on bad policy and overstates the seriousness of the offense. A handful of courts have done so, but most courts, including within this circuit and including this court, adhere. *See United States v. Bostock*, 910 F.3d 348, 350-51 (7th Cir. 2018); *United States v. Turner*, 93 F.3d 276, 287 (7th Cir. 1996); *see, e.g., United States v. Hernandez*, No. 1:19cr69, ECF 55 at 4-6 (N.D. Ind. Aug. 10, 2020). The court sees no reason to depart from this wisdom today, or to create sentencing disparities within this very courtroom.

The last two drug buys involved high purity methamphetamine (98 percent ± 6 percent). The street places greater value on weight and purity, and for self-evident reasons in the drug trade. Mr. Delaney was selling a mere gram—the weight of a paperclip—for approximately $100. The court isn't of the view that drug purity has nothing to do with culpability or the severity of a drug offense, or its harmful impact on the public. *See Hernandez, supra* at 4-6.

Indeed, methamphetamine remains one of the most commonly abused drugs and one that most contributes to violent crime. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A); Nat'l Inst. on Drug Abuse, *Methamphetamine Research Report* 2 (2019). Not surprisingly, Congress has treated mixtures of methamphetamine and actual methamphetamine differently in establishing sentencing minimums. *See* 21 U.S.C. § 841(b)(1)(A)(viii). In choosing against a variance, the court isn't inclined to ignore these realities of the street, much less the wisdom of Congress.

In addition, Mr. Delaney's conduct involved more than four times the 50 grams of methamphetamine that mandates his ten-year minimum sentence. *See* 21 U.S.C. § 841(b)(1)(A)(viii). He was moving multiple user amounts in any given deal. This contextualizes the seriousness today, *see* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and underscores why a sentence at the bare statutory minimum—a variance of more than five years—would create unwarranted sentencing disparities when he is more culpable than the average offender, or even an offender who deserves the minimum sentence because he has less criminal history and distributed only 50 grams, *see* 18 U.S.C. § 3553(a)(6); *see also* USSC, *Interactive Data Analyzer* (visited Jan. 11, 2022) (average sentence of 143 months in 2021 for methamphetamine distributors). That is no less true when this four-times ratio is conservative—it doesn't account for the unanalyzed methamphetamine from his first controlled buy or capture the real scope of his dealing.

Wisely consulted, the guidelines ordinarily pose the best hope, on a national basis, for avoiding unwarranted sentencing disparities among similar defendants, *see* 18 U.S.C. § 3553(a)(6), albeit only an initial benchmark, *Gall v. United States*, 552 U.S. 38, 50 (2007). Lost in some translation is Mr. Delaney's

deep placement within category VI, though in fairness three marijuana convictions contribute to this.[3] Deterrence and public safety are weighty concerns, given his persistence with drugs and seeming inability, despite four opportunities of drug treatment and his personal gifts, to forge a different road. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C). Probation and shorter prison sentences haven't historically redirected him; instead his criminal conduct has escalated—not slowed—over a decade from marijuana possession to cocaine possession now to methamphetamine distribution, even offering one time to sell a firearm on the street too. *See* 18 U.S.C. § 3553(a)(1).

He had a close call once in state court, even began serving a sizeable sentence for alleged methamphetamine dealing until the state dismissed the charges. Without finding that he committed that conduct, that situation should have been a true wake-up call, but he persisted into this federal offense. *See* 18 U.S.C. §§ 3553(a)(2)(A), (a)(2)(B). That said, and serving as a reasonable counterbalance, today's sentence will measurably be his longest sentence to date. Review of all § 3553(a) factors persuades the court that a sentence of 180 months is sufficient but not greater than necessary to promote federal sentencing goals.

A supervised release term of at least 5 years is required. *See* 21 U.S.C. 841(b)(1)(A); *see also* U.S.S.G. § 5D1.2(a)(1) (recommending 2-5 years). A term of 5 years is appropriate.

Mr. Delaney cannot pay the fines recommended by the guidelines even if afforded the most generous of installment payment schedules, so the court imposes no fine. A special assessment of $100.00 is mandatory. 18 U.S.C. § 3013(a)(2)(A).

---

[3] Two prior marijuana convictions were in Michigan where the drug today is recreationally legal. That said, these convictions speak to his lack of respect for the law then; and he remains in CHC VI even without these two Michigan convictions and a third point-triggering marijuana conviction in Indiana.

SENTENCE

Accordingly, it is the court's judgment that the defendant, Shaquille Delaney, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 180 months.

Under 18 U.S.C. § 3585, the court leaves it to the Bureau of Prisons to determine the appropriate amount of time served to be credited toward the defendant's sentence. The court recommends that the Bureau of Prisons designate as the place of the defendant's confinement, consistent with his security classification as determined by the Bureau of Prisons, a facility where he may participate in a residential drug abuse program (RDAP), namely FCI Milan.

Upon release from prison, the defendant will be placed on supervised release for a term of 5 years. While on supervised release, he must comply with the terms of supervision set forth in ¶¶ 134-146 of the presentence report, which paragraphs the court incorporates as part of this sentence having made an independent judgment that they should be imposed under 18 U.S.C. § 3583(d). The defendant expressly waived reading of these supervisory conditions.

The court imposes no fine. The defendant must pay to the United States a special assessment of $100.00, which is due immediately.

The court grants the government's motion to dismiss counts 1, 3 and the forfeiture allegations of the indictment.

SO ORDERED.

January 12, 2023                             *s/ Damon R. Leichty*
                                             Judge, United States District Court

cc: S. Delaney